UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-CV-289-SNLJ |
| MATTHEW RIDER and M.I.-S., a minor, by KASANDRA ILER, her Next Friend | ) ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM AND ORDER

Plaintiff Victoria Automobile Insurance Company ("Insurer") brought this declaratory judgment action against defendants Matthew Rider ("Driver") and M.I.-S. ("Child") seeking a judgment that it owes no duty to defend or indemnify Driver. Insurer moved for summary judgment (#26), and Driver moved to dismiss, or in the alternative, to stay proceedings (#37) based on an abstention theory. Both motions are ripe. Driver's motion to dismiss, or in the alternative, to stay proceedings is denied, and Insurer's motion for summary judgment is granted.

**I.  Factual Background**

Back on October 5, 2015, Insurer issued a policy ("Initial Policy") of automobile insurance to Bruce Rider, Driver's father. The Initial Policy covered two vehicles: a Lincoln and a 2002 Chevrolet Trailblazer ("Blazer"). Driver was entitled to certain rights under the Initial Policy because he was listed as a driver and lived with his father.

1

Driver's father was the primary driver of the Lincoln, while Driver was the primary driver of a 1999 Blazer. It seems that Driver's father meant to insure the 1999 Blazer, but due to a mix up, the Initial Policy insured the 2002 Blazer—a vehicle the Riders neither owned nor drove.

Two months later, in December 2015, Driver's mother called Insurer and removed the Blazer from the Initial Policy. Of course, this lowered the Initial Policy's premiums. The same day, Insurer sent an amended declaration page (#28-10) to the Rider home, but Driver's Mother claimed they never received it. The amended declaration page noted that it superseded any prior declaration. On January 8, 2016, Driver's father paid the lower premium. Then, at some point in the middle of January, Driver's mother claims she called Insurer and added the Blazer back to the Initial Policy. No document, recording, or anyother piece of evidence confirms this.

At the beginning of February, Driver's mother called Insurer and complained about the monthly premium payment. She explained that—because she removed the Blazer from the Initial Policy—she was told the monthly premium payment would drop from $68.05 (for two vehicles) to roughly $25 (for the Lincoln), and she wanted to know why the payment had not dropped. The representative explained that the premium had dropped to $27.05, but the payment also included a $10 installment fee. So $37.05 was the correct monthly premium for the Lincoln, and Driver's mother paid it at the end of the call. A voice recording confirms this call.

At the beginning of March, Driver's father paid the $37.05 premium. The same day, Insurer sent Driver's father a renewal offer, which required an initial payment of

$100 and five later monthly payments of $64.00. About a week later, Driver's mother called Insurer to complain about the renewal offer. She thought the $100 payment was too high for "one vehicle" and threatened to get auto insurance elsewhere. Insurer explained that the premiums had gone up because Driver—who, again, was listed as a driver on the Initial Policy—had received a driving violation. A voice recording also confirms this call. The next month, Driver's Father paid the $100 and renewed the policy ("Renewed Policy").

A month later, on May 11, 2016, Driver was taking his wife, who was in labor, to the hospital. Driver suddenly slowed down and was hit by a semi. Driver's wife did not survive, but Child was delivered and did survive. The Renewed Policy was effective at the time of the accident, and two months after the accident, Insurer sent the Riders a Proof of Insurance Letter (#10-1). This letter listed both the Lincoln and Blazer, and it noted that the Blazer was removed from the Initial Policy on December 5, 2016. Of course, this was an error because the removal date was five months after the date on the Proof of Insurance Letter. The Blazer was actually removed from the Initial Policy on December 5, 2015, not 2016. Insurer later corrected the error and sent a new letter

## II. Procedural Background

Child sued Driver, the trucker, and the trucker's employer in state court. Driver sought coverage and demanded that Insurer defend the state court lawsuit and indemnify him for any adverse judgment. Insurer defended Driver under a reservation of rights and right to withdraw, pending its own investigation of coverage. Insurer investigated and determined the Blazer that Husband was driving was not insured under the Renewed

3

Policy. It denied coverage, withdrew representation, and filed this declaratory judgment, asking the Court for a declaration that it has no duty to defend or indemnify Driver (#1). Driver counterclaimed and asked the Court to reform the Initial Policy by adding the 1999 Blazer—the vehicle involved in the accident—in place of the 2002 Blazer—the vehicle actually listed in the Initial Policy.

Later, Child and Driver agreed to arbitrate their claims, and Child dismissed Driver without prejudice from the underlying state action. Then, Husband moved to dismiss or stay (#37) Insurer's declaratory judgment claim based on an abstention theory. Husband claimed the arbitrator would either (1) enter an award for Insurer, mooting the declaratory judgment claim, or (2) enter an award for Child, who will then confirm the award and file a state garnishment action against Insurer, and federal courts always dismiss or stay the declaratory judgment action in that situation due to the parallel state court proceeding. Insurer opposed the motion, claiming there is no parallel state court proceeding currently pending, a necessary condition to abstention.

Child and Driver arbitrated their claims, and the arbitrator entered an award in favor of Child. Child filed a petition to confirm the arbitration award in state court, and Insurer intervened to challenge the award. After Insurer intervened, Driver filed a cross-claim against Insurer for coverage. Next, Child filed a "Notice of Parallel State Court Proceeding" (#50) to bring the cross-claim to this Court's attention. In the Notice, Child argued that the state court proceeding is now a "parallel proceeding" and asked this Court to stay the declaratory judgment action. Insurer then moved to strike the Notice (#51) because the Notice asked for relief but failed to do so in a motion. Driver did not respond

4

to the motion to strike, and the time for doing so has passed. Finally, Insurer removed the state court action, and it plans to ask that federal court to transfer the action to this Court.

## III. Motion to Dismiss (#37)

Driver urges the Court to dismiss or stay the declaratory judgment claim because (1) this Court lacks subject matter jurisdiction and (2) state court is the proper forum to litigate this coverage dispute.

### A. Subject Matter Jurisdiction

Soon after this declaratory judgment action was filed, Driver moved to dismiss, claiming 28 U.S.C. § 1332(a)'s amount-in-controversy requirement was not met because the Renewed Policy had a $25,000 bodily-injury limit and a $50,000 per-accident limit (#5 at 1). This Court found "the potential costs of defense and indemnification may well exceed $75,000 and it does not appear to a *legal certainty* that the amount in controversy is less than $75,000" and denied the motion (#8 at 4.)

Driver now claims the jurisdictional amount is not met because Insurer withdrew its representation and did not defend him in the arbitration. He also stipulates that his attorneys in the state court proceedings will not seek reimbursement of their fees and costs. But Insurer points out "[i]t is well established that the requirements for diversity jurisdiction must be satisfied only with respect to the time of filing. Subsequent events reducing the amount in controversy do not destroy diversity jurisdiction." *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (internal citation omitted). Husband does not dispute this and abandoned the argument in his reply brief

(#47). The Court finds the amount-in-controversy requirement is met, and subject matter jurisdiction is satisfied.

B. **State Court as Proper Forum—Abstention or Judicial Economy**

Next, Driver claims this Court should dismiss or stay the declaratory judgment action "because the future state court proceedings . . . will provide the parties with the proper forum to litigate their dispute." (#38 at 1.) That is, Driver claims after the state court confirms the arbitration award, Child will file a garnishment action against Insurer in state court, and federal courts always dismiss or stay declaratory judgment actions in that situation based on abstention.

Driver's abstention argument comes from *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). *Brillhart* instructs district courts to consider

> whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Brillhart*, 316 U.S. at 495. By its own terms, *Brillhart* applies only when the "questions in controversy" may be settled by a parallel "proceeding *pending* in state court." *Id.* (emphasis added). So this Court will not abstain based on a future garnishment action.

Although abstention is unavailable, Driver still asks the Court to defer to the future garnishment action because Child will file that action soon (as soon as the state court confirms the arbitration award). This argument is grounded in judicial economy, and

6

Driver relies on *State Farm Fire & Cas. Co. v. K.R.*, No. 10-01085-CV-W-DGK, 2011 WL 528398 (W.D. Mo. Feb. 8, 2011). In *State Farm*, the insurance company filed a declaratory judgment action against its insured and several victims. *Id.* at *1. The underlying state-court action against the insured proceeded to a bench trial and was under advisement when the victims moved to dismiss the federal declaratory judgment claim. *Id.* The court noted that abstention was unavailable because there was no parallel proceeding pending in the state court. *Id.* at *2. Instead, the court stayed the declaratory judgment action based on "judicial economy." *Id.*

At most, *State Farm* is persuasive authority. But this case is different from *State Farm* for at least two reasons. First, the court in *State Farm* stayed proceedings just three months after the insurance company filed the declaratory judgment action. Here, in contrast, Insurer filed this declaratory judgment claim more than a year ago. Summary judgment is fully briefed, and trial is set for next month. Second, the court in *State Farm* suggested the garnishment action—the parallel state court proceeding—would soon be filed in state court. But in this case, it is unclear when the garnishment action will be filed in state court. Child filed a petition to confirm the arbitration award, but Insurer has intervened and plans to challenge the award. A case management conference is scheduled just a week before this declaratory judgment action goes to trial. Thus, judicial economy does not suggest that a stay is appropriate.

Finally, Child argues in the "Notice of Parallel State Court Proceeding" (#50) that Driver's cross-claim against Insurer for coverage is a parallel state court proceeding to which this Court should defer. As Insurer points out in its motion to strike the notice

(#51), Child requests a court order in its "Notice." But pursuant to Rule 7(b)(1) of the Federal Rules of Civil Procedure, "A request for a court order must be made by motion." In any event, Insurer removed that lawsuit to federal court (#56), so it is no longer a state court proceeding, parallel or otherwise. This "request" is denied as moot.

For these reasons, Driver's motion to dismiss, or in the alternative to stay, is denied.

## IV. Motion for Summary Judgment (#26)

### A. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962). This Court must construe the facts in the light most favorable to the nonmoving party, but it need not accept a version of the events that "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)). Because "the interpretation and construction of insurance policies is a matter of law, . . . such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

Because this is a diversity case, the Court applies state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see*

*also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). The parties agree that Missouri substantive law controls.

B. **Discussion**

Summary judgment boils down to one question: is there a genuine issue of any material fact as to whether the Blazer that Driver was operating at the time of the accident was a covered vehicle under the Renewed Policy? To answer this question, the Court must interpret the Renewed Policy.

Under Missouri law, a court interpreting an insurance policy "gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017). "If the policy language is clear and unambiguous, it must be construed as written." *Id.* The language is ambiguous "only if a phrase is 'reasonably open to different constructions.'" *Id.* (*quoting Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012)). "Courts may not create an ambiguity when none exists." *Id.*

Under the Renewed Policy, Insurer promises to "pay for damages for which you are legally liable as a result of an accident arising out of the use of *your auto*." (#28-12 at 7) (emphasis added). Driver is entitled to this coverage because he lives with his father, the policyholder. Thus, whether there is coverage turns on the definition of "your auto." If the Renewed Policy's definition includes the Blazer that Driver was operating at the time of the accident, he is entitled to coverage. If the definition does not include the Blazer, Driver is not entitled to coverage.

Under the Renewed Policy, "your auto" "means the vehicle(s) described in the Declaration." (#28-12 at 3.) The Renewed Policy Declarations (#28-13) list only the Lincoln as a covered vehicle. This language is clear and unambiguous, so this Court must construe the Renewed Policy as written. Thus, the Blazer that Driver was operating at the time of the accident was not covered by the Renewed Policy, and Driver is not entitled to coverage.

Despite this straightforward interpretation, Driver argues that summary judgment is inappropriate for two reasons.

**Driver's mother claims she added the Blazer back to the Initial Policy.** First, Driver claims there is conflicting testimony between Driver's mother and Insurer. Again, Driver's mother testified that she called Insurer and added the Blazer back to the Initial Policy, but Insurer claims the Blazer was never added after it was removed. Driver claims this "conflict in the evidence created by [his mother's] testimony constitutes a genuine issue as to a material fact and, therefore, precludes summary judgment." (#34 at 3.) This argument fails for at least two reasons.

First, as explained above, the Amended Policy Declarations are unambiguous. Thus, this Court must interpret the Renewed Policy *as written*. This Court cannot reach back to a prior oral conversation and create coverage when the later *written* agreement does not provide that coverage. Indeed, that alleged conversation is just parol evidence that this Court cannot consider because it was not part of the written agreement. *See, e.g.*, *Black & Veatch Corp. v. Wellington Syndicate*, 302 S.W.3d 114, 125 (Mo. Ct. App. 2009).

Second, this Court need not accept the claim that Driver's mother added the Blazer back to the Initial Policy because that claim "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Marksmeier*, 622 F.3d at 900 (*quoting Scott*, 550 U.S. at 380). Driver's Mother claims she added the Blazer back to the Initial Policy sometime in the middle of January 2016. But voice recordings of two later calls clearly contradict that. At the beginning of February 2016, she called Insurer and explained that she thought the monthly premium payment would be $25—not $37—because she removed the Blazer from the Initial Policy. Insurer told her that $37.05 was the correct amount—for the Lincoln—and Driver's father then continued to pay that amount monthly. Next, in March 2016, Driver's mother called Insurer and asked why the initial renewal payment was so high for just one vehicle—the Lincoln. The record clearly shows that Driver's mother did not believe she added the Blazer back to the Initial Policy.

**Insurer sends a proof of insurance letter that lists the Blazer as a covered vehicle.** Second, Driver claims Insurer's "own documents create a conflict in the evidence precluding summary judgment." (#34 at 3). Again, on July 5, 2016—about two months after the accident—Insurer mailed the Riders a Proof of Insurance Letter that listed the Blazer as a covered vehicle. This was an error, as the Proof of Insurance noted the Blazer was removed on December 5, 2016, five months after the date on the Proof of Insurance. Insurer later found the mistake, corrected it, and sent an updated Proof of Insurance. Regardless, this argument still fails because the Blazer was not listed on the Amended Policy Declarations, and nothing in the Proof of Insurance Letter claims to

amend the written policy. Because the Amended Policy is unambiguous, this Court must interpret the contract as written.

**Counterclaim.** Finally, Insurer argues that Driver's counterclaim for reformation should be dismissed. The Court agrees. Even if the Court reforms the Initial Policy to cover the 1999 Blazer instead of the 2002 Blazer, it is undisputed that Driver's mother removed the Blazer from the Initial Policy. It is also undisputed that the Amended Policy Declarations—which were effective at the time of the accident—do not list either Blazer as a covered vehicle. Thus, Driver fails to state a claim for which relief may be granted, and it is dismissed.

## V.     Conclusion

Driver's motion to dismiss, or in the alternative, to stay (#37), is denied, and Insurer's motion for summary judgment (#26) is granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Matthew Rider's motion to dismiss, or in the alternative, to stay (#37) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff Victoria Automobile Insurance Company's motion for summary judgment (#26) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Matthew Rider's counterclaim is **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiff Victoria Automobile Insurance Company's motion to strike (#51) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff Victoria Automobile Insurance Company's motion for relief from ADR referral (#54) is **DENIED AS MOOT**.

Dated this   16th   day of February 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE